**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **TAMARA LU COGBURN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 25-CV-19-GLJ** |
| ) | |
| **FRANK J. BISIGNANO,**[1] ) | |
| **Commissioner of the Social** ) | |
| **Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Claimant Tamara Lu Cogburn requests judicial review of a denial of benefits by the

Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She

appeals the Commissioner's decision and asserts that the Administrative Law Judge

("ALJ") erred in determining she was not disabled. For the reasons discussed below, the

Commissioner's decision is hereby REVERSED AND REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

Act "only if [her] physical or mental impairment or impairments are of such severity that

---

[1] On May 6, 2025, Frank J. Bisignano became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Ms. Colvin as the Defendant in this action.

[s]he is not only unable to do [her] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically sever impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

## Claimant's Background and Procedural History

Claimant was forty-seven years old at the time of the administrative hearing. (Tr. 43). She completed high school and has past relevant work as a sales clerk. (Tr. 33, 46, 60). Claimant alleges an amended onset date of September 29, 2022, due to limitations imposed by insomnia, high blood pressure, incontinence, bipolar disorder, panic attacks, and anxiety. (Tr. 46, 115).

## Procedural History

On June 24, 2022, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 18, 211-25). On February 12, 2024, ALJ David R. Wurm, conducted an administrative hearing and determined Claimant was not disabled on March 28, 2024. (Tr. 18-63).  The Appeals Council denied review, making the ALJ's March 28, 2024, opinion the Commissioner's final decision for purposes of this appeal. (Tr. 1-6); *See* 20 C.F.R. § 404.971.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. (Tr. 33-34). At step two he determined that Claimant had the severe impairments of hypertension, cerebral vascular accident, carpal tunnel syndrome, and depression/bipolar affective disorder. (Tr.

21). He found at step three that Claimant did not meet any Listing. (Tr. 22-24). At step four he found Claimant had the residual functional capacity ("RFC") to perform light work except Claimant can stand and/or walk four hours in an 8-hour day and frequently handle, finger, and feel but cannot be exposed to unprotected heights, work hazards, or uneven walking surfaces. (Tr. 24). Due to psychologically-based limitations, the ALJ found Claimant can carryout simple instructions, occasionally interact with others, and occasionally adapt to changes in a routine work setting. (Tr. 24). The ALJ then concluded that although Claimant could not return to her past relevant work, she was not disabled because there was work she could perform in the national economy, *i.e.*, garment sorter, electronics worker, and mailroom clerk. (Tr. 34-35).

### Review

Claimant contends that the ALJ erred by failing to: (1) properly analyze the medical opinion evidence of Amy Hudson, Ph.D.; and (2) support his findings with substantial evidence as it pertains to Claimant's manipulative limitations. The Court agrees as to the first proposition and finds this matter should be reversed and remanded.

The relevant medical evidence reveals that in February 2022 Claimant established care with Rachel Burgess, APRN, reporting ongoing anxiety and bipolar disorder. (Tr. 436). Treatment notes reflect Claimant presented with unmedicated hypertension and appeared restless, fidgety, tearful, and concerningly manic. (Tr. 443, 448). Claimant followed up with Nurse Practitioner Burgess the following month reporting ongoing difficulties with sleep and manic episodes and examination revealed ongoing stage 3 hypertension despite compliance with medication and a grade IV/VI heart murmur. (Tr.

462-66). Over the next two months, examinations revealed improvements to Claimant's hypertension and bipolar disorder. (Tr. 465-512).

Claimant was admitted to Pushmataha Hospital on September 29, 2022, complaining of left sided weakness and slurred speech. (Tr. 574, 613). CT scans of the brain, with and without contrast, were unremarkable, and a CT of the neck revealed a hypodense nodule in the right thyroid but was otherwise unremarkable. (Tr. 606-08, 615-16). Examination on October 1, 2022, revealed slurred speech, mild facial drooping, and mild weakness of left upper extremity. (Tr. 613-14). Claimant was discharged on October 2, 2022, with instructions to obtain a neurology consult. (Tr. 616). Claimant established care with Paris Cardiology Center on October 13, 2022, and was assessed with cerebrovascular disease. (Tr. 625-31). A subsequent brain MRI revealed a possible old lacunar infarct in the left basal ganglia and right frontal lobe area. (Tr. 752, 757). Claimant established care with Shivaram Gowdagere, M.D., for a neurological evaluation, at which time he encouraged daily exercise and instructed Claimant to follow up every six months. (Tr. 752).

Thereafter Claimant followed-up with Nurse Practitioner Burgess routinely through November 2023, reporting ongoing difficulties with abnormal moods (e.g., irritability and restlessness), slurred speech, and residual left and right-side weakness. (Tr. 834-912). In November Claimant complained of bilateral hand numbness that had been ongoing for approximately two months. (Tr. 944). Examination revealed a positive Tinel's Sign test with pain radiating to the middle fingers, bilaterally. (Tr. 949). Claimant was assessed with carpal tunnel syndrome and referred to Paris Orthopedic. (Tr. 949-51). She established care

with Paris Orthopedic in December 2023, presenting with mild tenderness to palpation and a positive Tinel's, Durkan's, and medial compression tests. (Tr. 958-59).

On October 27th, 2022, Claimant presented for a psychological consultative examination before Amy Hudson, Ph.D. (Tr. 686-91). Dr. Hudson noted Claimant "presented with [mental status examination] generally [within normal limits], socially appropriate and comfortable, somewhat anxious but euthymic." (Tr. 687). A Montreal Cognitive Assessment ("MoCA") was administered, and Claimant obtained a score of 18, indicative of mild cognitive impairment. (Tr. 689-90). Claimant's speech was "sometimes confusing and tangential[,] terse, of little spontaneity, and somewhat halting with mild dysarthria[.]" (Tr. 687). Dr. Hudson assessed Claimant with "Bipolar DO II MRE Depressed and major vascular neurocognitive disorder without behavioral disturbance history of antisocial features" and found Claimant was markedly limited in her capacity for maintaining persistence and pace for a 4-hour period, interacting with coworkers and supervisors, and adapting to a workplace stressors. (Tr. 690). She found Claimant could not understand and remember even simple work instructions and was unable perform routine repetitive tasks but could likely manage her own finances or choose a trustworthy payee. (Tr. 690).

In February 2023 Claimant presented for a consultative examination before Russell Arellanes, D.O., where Claimant presented with good eye contact, appropriate mood and thought processes, and normal concentration and memory. (Tr. 808-09). Examination revealed an abnormal sensory examination to light touch on Claimant's left hand but full grip strength bilaterally. (Tr. 808-812).

In 2023, State examiners determined initially and upon reconsideration that Claimant could perform the full range of light work without any postural or manipulative limitations. (Tr. 104-05, 120-22). State agency psychologists determined initially and upon reconsideration that Claimant could understand, recall, and perform simple repetitive tasks, focus for two-hour periods with routine breaks, pace and persist for an 8-hour work day, adapt to a usually stable work environment with some changes with forewarning, and interact with supervisors and coworkers on a superficial level but was unable to appropriately interact with the public. (Tr. 108-09, 125).

At the administrative hearing, Claimant testified that following her September 29th, 2022, hospital visit, her hands go numb and cramp, she slurs words, and has difficulties with short-term memory. (Tr. 52). She utilizes a brace for each hand and can use her hands for approximately 15 minutes before she experiences cramps. (Tr. 53-54). As to her daily activities, Claimant asserted she vacuums, dusts, and lets her dogs in and out of the house but cannot engage in these tasks for more than 15-minute intervals. (Tr. 55-56). She is unable to take a shower and utilize her hands to fasten shoe laces, buttons, or zippers. (Tr. 55-56).

The ALJ then elicited testimony from a vocational expert ("VE") to determine what jobs the claimant could perform given the RFC described above. (Tr. 60-63). The VE testified that such a claimant could perform the representative jobs of garment sorter, electronics worker, and mailroom clerk. (Tr. 61). Claimant's counsel then offered a modified hypothetical in which the individual would be limited to occasional, handling, fingering, and feeling. (Tr. 62). The VE testified such an individual would be unable to

perform the identified vocations and would be precluded from the sedentary unskilled occupations. (Tr. 62).

In his written opinion at step four, the ALJ extensively discussed Claimant's hearing testimony and much of the evidence of record. (Tr. 25-34). He then found that Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with treatment records (Tr. 26). The ALJ found Dr. Arellanes's opinion unpersuasive because it did not contain a medical assessment of claimant's physical abilities and he was not a mental health specialist. (Tr. 29).[3] He found Dr. Hudson's opinion unpersuasive because it was internally inconsistent and not consistent with the evidence of record. (Tr. 30). In reaching this conclusion the ALJ reasoned that Dr. Hudson's specific opinion that Claimant could not understand and remember simple work instructions or perform routine repetitive tasks was not supported by her findings. (Tr. 29-30). Conversely, the ALJ then found the state agency physician's medical findings partially persuasive, but noted the record supported greater limitations with respect to Claimant's manipulative limitations in light of Claimant's bilateral hand numbness.  The ALJ also found the state agency psychologists findings partially persuasive, noting that the record did not support a finding that Claimant was unable to interact and tolerate contact with the public. (Tr. 32).

### I.    Medical Opinion of Dr. Hudson

---

[3] The ALJ's opinion indicates the February 11, 2023, consultative examination was conducted by David Lewis, D.O. (Tr. 29). However, the record reflects that it was administered by Dr. Arellanes.

Claimant first asserts the ALJ erred in evaluating the medical opinion of Dr. Hudson in addressing both the supportability and consistency factors. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(c). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. 404.1520c(b)(2), 416.920c(b)(2).  The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence and supporting explanations." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(C)(2). Whereas the consistency factor calls for a comparison between the medical opinion and

"the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520(c)(2), 416.920c(c)(2).

As to the supportability factor, Claimant challenges the ALJ's indication that Dr. Hudson's opinion states the mental status examination was generally within normal limits because "[n]owhere in the report does Dr. Hudson categorize the examination or her findings as 'essentially normal.'" Docket No. 13, at p. 17. However, Dr. Hudson's report specifically states that Claimant's mental status examination was generally within normal limits, and the ALJ's opinion further acknowledges the various cognitive impairments Dr. Hudson identified in her examination. (Tr. 29-30, 687). At its crux, Claimant's argument here is that the Court should reweigh the evidence. The ALJ explained how Dr. Hudson's medical findings were not sufficiently supported by her own findings and explanations. This is the type of determination the ALJ is empowered to make, and it must not be disturbed, even if the Court might have weighed the evidence differently. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("ALJ was entitled to resolve such evidentiary conflicts and did so. . . . Concluding otherwise would require us to reweigh the evidence, a task we may not perform.").

Claimant also argues the ALJ erred in assessing the consistency factor by not discussing Claimant's visits with her primary care provider wherein Nurse Practitioner Burgess routinely recorded Claimant's mood and affect as abnormal. The Court agrees. The ALJ found Dr. Hudson's opinions inconsistent with "other evidence in the record noting that the claimant was cooperative. She exhibited good eye contact. Her mood was appropriate with clear thought processes. Memory and concentration was [sic] normal.").

(Tr. 30). This assessment fails to address Dr. Hudson's opinion that Claimant is not capable of understanding and remembering simple work instructions and cites only to Claimant's consultative examination with Dr. Arellanes's as being inconsistent—an opinion that the ALJ found unpersuasive because, *inter alia*, Dr. Arellanes was not a mental health specialist.  Additionally, the ALJ's assessment fails to engage with or acknowledge the evidence consistent with Dr. Hudson's opinions, *e.g.*, Claimant's visits with Nurse Practitioner Burgess which routinely documented Claimant's abnormal mood and affect in addition to Claimant's irritability, restlessness, and difficulties sleeping.  (Tr. 834-912). *See Coronel v. Comm'r of Soc. Sec.*, 2023 WL 2585660, at *3 (E.D. Okla. Mar. 2, 2023) ("[T]he ALJ failed to address how the evidence he relies on to reject these limitations impacts the supportability or consistency of Dr. Farrow's opinion."). The ALJ may not only address the evidence that is favorable to his decision while disregarding the evidence that contradicts it. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."); *see also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (internal citations omitted)*; Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") (internal citations omitted).

While it is true the ALJ does acknowledge some of Claimant's visits with Nurse Burgess, including her October 4, 2022, visit where Claimant reported being irritable and restless in addition to experiencing symptoms of anxiety and depression, (Tr. 27), the ALJ nevertheless emphasized positive findings, such as Claimant being oriented to person, place and time with intact memory, while disregarding that the same records frequently reflected an abnormal mood and affect. (Tr. 27-28, 738, 949). Most importantly, it remains unclear to the Court how the ALJ determined the opinion of Dr. Hudson, a mental health professional, is inconsistent with the longitudinal record based on the medical opinion of Dr. Arellanes, a record that he determined to be unpersuasive because Dr. Arellanes is not a mental health specialist. The Court must be able to follow the logic, and here it cannot. *See Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (citing *Brown v. Comm'r of Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

## II.     Handle, Finger, and Feel

Claimant next argues the ALJ failed to support his RFC with substantial evidence in finding Claimant could frequently handle, finger, and feel. The Court disagrees and finds no error here.

In evaluating Claimant's manipulative limitations, the ALJ found the opinions of the state agency physicians partially persuasive because the record contained evidence consistent with greater manipulative limitations. The ALJ discussed, *inter alia*:

-12-

(i) Claimant's November 2, 2023, visit to Paris Orthopedic Clinic where she presented with bilaterally hand numbness and a positive Tinel's sign, as well as (ii) the December 14, 2023, follow-up visit where Claimant continued to report wrist pain and exhibited a positive Tinel's sign and medial compression tests. (Tr. 28). The ALJ also discussed Claimant's consultative examination with Dr. Arellanes where she exhibited no deficits in grip strength and the state agency medical physicians' opinions that Claimant need no manipulative limitations. In essence, Plaintiff's argument here is a request for the Court to reweigh the evidence, which it simply cannot do. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

Nonetheless, because the ALJ failed to properly evaluate the opinion evidence of record, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of all the evidence in the record. If such analysis results in any change to Claimant's RFC, the ALJ should redetermine what work Claimant can perform, if any, and ultimately whether she is disabled.

### Conclusion

In summary, the Court finds that the decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and the case REMANDED for further proceedings.

**DATED** this 19th day of March, 2026.

_____

**HON. GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**